IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | | |
|---|---|---|
| JAMIR MITCHELL, | ) | |
| | ) | |
| Plaintiff | ) | 1:25-CV-00012-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| CAPT WIELAND, LT FIEDOR, SGT. | ) | |
| KEMP, C.O.  CROSE, CO YOUNG, | ) | MEMORANDUM OPINION ON |
| SUPERINTENDANT R. IRWIN, CERT | ) | DEFENDANTS' PARTIAL MOTION TO |
| TEAM-, JOHN DOES 1-10/JANE DOE; | ) | DISMISS |
| LPN CRYSTAL BEST, NURSE; AND | ) | |
| D.O.C., | ) | |
| | ) | RE: ECF NO. 21 |
| Defendants | ) | |
| | ) | |

Defendants Pennsylvania Department of Corrections, Irwin, Wieland, Kemp,

Crose, Young, Fiedor, and Best have moved to dismiss certain claims of Plaintiff's

Complaint under Fed. R. Civ. P. 12(b)(6). *See* ECF No. 21. For the following reasons,

Defendants' motion will be GRANTED in part and DENIED in part.[1]

I.      Relevant Background and Procedural History

Plaintiff Jamir Mitchell ("Mitchell"), an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), brings this pro se civil rights

action against eight named Defendants[2] and eleven Doe Defendants employed at the

DOC's State Correctional Institution in Forest County ("SCI-Forest"), where Mitchell

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge as authorized by 28 U.S.C. § 636.

[2] The eight identified Defendants are the PA DOC, Superintendent R. Irwin, Capt. Wieland, Lt. Fiedor, Sgt. Kemp, C.O. Crose, C.O. Young, and LPN Crystal Best. *See* ECF No. 12.

was previously incarcerated.[3]

The Complaint alleges that the Defendants used excessive force against Mitchell in retaliation for filing a lawsuit against Defendant Kemp. Defendants argue that: (1) Mitchell's claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) the claims against Defendants Irwin and Wieland should be dismissed based on their lack of personal involvement; and (3) the Complaint fails to allege facts to state claims of conspiracy under § 1983, First Amendment retaliation, Eighth Amendment deliberate indifference, Eighth Amendment failure to protect, and disability discrimination under Title II of the American Disabilities Act ("ADA"). The motion is ripe for disposition. *See* ECF No. 22 (Defendants' brief); ECF No. 29 (Mitchell's opposition brief).

II.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present

---

[3] Mitchell remains in the custody of the DOC but is currently housed at its State Correctional Institution at Benner Township.

factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations of the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, because Mitchell is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v.*

3

*Kerner*, 404 U.S. 519, 520-521 (1972).  If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite correct legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be unartfully drawn and should be read "with a measure of tolerance").  But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'"  *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III.    Factual Allegations and Claims

For the purposes of Defendants' motion, the Court accepts as true the following factual allegations of the Complaint.  In late April 2024, Mitchell was placed in cell JC-24 with cellmate Ryshawn Crawford ("Crawford"), where C.O. Smith provided Crawford with two additional trays of food at least twice a week, for an unspecified length of time.  ECF No. 12, ¶ 1.[4]  Prior to Mitchell's placement in JC-24, Defendant Kemp told Crawford that if he were to assault Mitchell for "filing a lawsuit against [Kemp]," Kemp would ensure Crawford would receive "extra trays."  *Id.*, ¶ 2. Mitchell does not allege how he became aware of this instruction.

On May 24, 2024, approximately one month later, while in the dayroom, Defendants Crose and Young expressed dissatisfaction that Crawford had not

---

[4] The relevant factual allegations are set out in paragraphs 1-15 of Mitchell's Complaint (ECF No. 12). Citations to the pleading are omitted except for quoted allegations.

assaulted Mitchell despite receiving extra trays of food.  Again, Mitchell does not allege how he became aware of this discussion.  After the distribution of the lunch trays, Young threatened to spray Mitchell and Crawford with oleoresin capsicum ("OC") spray as punishment for Crawford not attacking Mitchell.

The following day, May 25, 2024, between 3:00 p.m. and 6:00 p.m., Kemp, Young, and unspecified others allegedly came to JC-24 to carry out the prior threats. Kemp ensured that Crawford and Mitchell did not receive dinner.  Mitchell explained the situation to Lt. Fiedor, who did nothing. Mitchell alleges that this omission demonstrated Fiedor's participation in the alleged conspiracy.  Moments later, Fiedor returned with a one-man extraction team and authorized Mitchell and Crawford to be sprayed with "an entire fire extinguisher full of OC," after which Fiedor instructed the team to leave the unit.  *Id.*, ¶ 7.  Five to ten minutes later, Fiedor returned to the cell with two extraction teams and deployed "about two more fire extinguishers of OC into JC-24." *Id.*, ¶ 8.  Mitchell did not scream or yell, and the windows of his cell were uncovered.  He asserts that the use of OC spray against "two mental health patients that are taking medication for mental disorders and were restrained behind the door" constituted a violation of the ADA.  *Id.*, ¶ 9.  Mitchell also alleges that Defendant Best's authorization of OC spray against him, despite his asthma and a history of a collapsed lung, constituted deliberate indifference to his serious medical needs and violated his rights under the equal protection clause because clearing the use of OC spray against inmates is a practice "applied to black prisoners and not whites".  *Id.*, ¶ 10.  Mitchell further alleges that he was left in JC-24 for nearly an hour, and when

he was finally removed, he did not receive full-body decontamination. He was then returned to JC-24, which he alleges had not been decontaminated. He was then placed on a seven-day shower restriction, effectively remaining exposed to OC spray during that time. Mitchell asserts that Irwin and Wieland were aware of the misutilization of OC spray and excessive force in the RHU since 2022 but failed to train staff at SCI-Forest. *Id.*, ¶ 15.

Mitchell's Complaint does not include separate counts. Construing the Complaint's allegations liberally, the Court has identified the following claims:

1. An Eighth Amendment excessive force claim against Defendant Fiedor and the John/Jane Doe Defendants;

2. An Eighth Amendment deliberate indifference to medical needs claim against Defendant Best;

3. A Fourteenth Amendment equal protection claim against Defendant Best;

4. A First Amendment retaliation claim against Defendants Kemp, Crose, and Young;

5. A Fourteenth Amendment conspiracy claim against Defendants Kemp, Crose, Young, Fiedor, Irwin, Wieland, and Best;

6. An ADA claim against Defendant Best, Fiedor, and John/Jane Doe Defendants; and

7. An Eighth Amendment failure to train claim against Defendants Irwin and Wieland.

IV. Discussion

    A. All claims for monetary relief against Defendants in their official capacities will be dismissed.

Mitchell asserts his constitutional claims under 42 U.S.C. § 1983, which authorizes an action in federal court to remedy a violation of rights secured by the

Constitution or laws of the United States "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Mitchell's Complaint seeks compensatory and punitive damages against Defendants in their respective official and individual capacities. To the extent he seeks money damages against the Defendants in their official capacities, his claims are barred by the Eleventh Amendment, which proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their official capacities. *See Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity).

The DOC is an agency of the Commonwealth of Pennsylvania, and, as such, it and its agents and employees acting in their official capacities are immune from monetary damages. *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019). Mitchell's claims for monetary relief against the Defendants in their official capacities will therefore be dismissed with prejudice.[5]

      B. The Complaint fails to state a failure-to-protect claim against Defendants Irwin and Wieland.

It is axiomatic that a § 1983 plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347,

---

[5] The Complaint does not seek injunctive or prospective declaratory relief against the Defendants in their official capacities. Such relief is not subject to Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). In any event, Mitchell's release from SCI-Forest makes such relief unavailable against the Defendants.

353 (3d Cir. 2006)).  This requires that each defendant play an "affirmative part" in the complained-of misconduct.  *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009).  In the absence of specific allegations that a defendant participated in depriving the plaintiff of a constitutional right, dismissal is appropriate.  *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 781–82 (W.D. Pa. 2013) (dismissing claims under Rule 12(b)(6) where the plaintiffs failed to allege sufficient facts showing that certain defendants played an affirmative role in the alleged Eighth Amendment violation).

Here, Mitchell alleges only that Irwin and Wieland "have been made aware of the misutilization of OC, and excessive force being implemented in RHU since 2022, yet failed to train/improperly trained subordinates, and is as if they set the stage for this to occur and is guilty for failing to protect, and involved in the conspiracy to retaliate."  ECF No. 12, ¶ 15.  These allegations, however, are conclusory and therefore insufficient to state a plausible claim.

The issue of "personal involvement" frequently arises when the plaintiff sues a supervisory official based on misconduct allegedly committed by a subordinate.  *See Evancho*, 423 F.3d at 353.  In that context, a defendant's liability "cannot be predicated solely on the operation of respondeat superior."  *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Instead, the plaintiff must show that each defendant played an "affirmative part" in the complained-of misconduct.

*Id.* This can be shown by alleging ***facts*** to support that the defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity," including the specifics of each defendant's direct involvement in the conduct that violated the plaintiff's rights or the source of each defendant's knowledge of the violation and how his acquiescence contributed to it. *Rode*, 845 F.2d at 1207–08. *See also Evancho*, 423 F.3d at 354.

Mitchell does not allege that Irwin or Wieland participated in, directed, or contemporaneously knew of the alleged use of force against him on May 25, 2024. Nor does he allege facts showing how either Defendant became aware of the alleged misconduct in the RHU, what information they received, when they received it, or how either acquiesced in the specific conduct at issue in this case. Instead, Mitchell relies on generalized and conclusory assertions that Irwin and Wieland were aware of prior incidents involving OC spray and excessive force and failed to properly train subordinates. Such allegations do not support personal involvement under § 1983. Accordingly, Mitchell's claims against Irwin and Wieland will be dismissed without prejudice.

9

C. The Complaint fails to state a First Amendment retaliation claim against any Defendant.

To state a First Amendment retaliation claim, a plaintiff must allege facts to support that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001)). In the prison context, protected activity includes filing grievances, lawsuits, or otherwise petitioning the government for redress. An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Absent direct evidence, retaliatory motive may be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Mitchell alleges that Kemp instructed Crawford to assault him because Mitchell had "fil[ed] a lawsuit against [Kemp]." ECF No. 11, ¶ 2. But he alleges no meaningful information concerning the lawsuit, including when it was filed, in which court, and its subject matter. Mitchell's allegations are far too vague and conclusory to support a plausible inference that the unspecified prior lawsuit motivated Kemp's subsequent conduct. Any such inference is further negated by the absence of any

10

allegation that Crawford acted on the alleged instruction and assaulted Mitchell.[6] Mitchell's retaliation claims against the other Defendants are even more untenable. He alleges no facts to support that the other Defendants knew of the lawsuit or that the lawsuit motivated their alleged use of force against him. These deficiencies are fatal to Mitchell's retaliation claim. The Court will therefore dismiss Mitchell's First Amendment retaliation claim.

> D. Defendants' motion will be denied as to the Complaint's Eighth Amendment deliberate indifference claim against Defendant Best.

The Eighth Amendment's prohibition of cruel and unusual punishment extends to prison officials' "deliberate indifference" to inmates' "serious medical needs." *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To state a claim for violation of his Eighth Amendment right to medical care, Mitchell must allege facts to support findings that: (1) he had a serious medical need, and (2) prison officials acted with deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official acts with deliberate indifference to a prisoner's medical needs only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S.

---

[6] "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Brightwell v. Lehman*, No. CIV.A. 03-205J, 2007 WL 2479682, at *6 (W.D. Pa. Aug. 29, 2007), *aff'd*, 637 F.3d 187 (3d Cir. 2011) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied*, 516 U.S. 1084 (1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

825, 837 (1994). Such indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Here, Mitchell alleges that Defendant Best authorized the use of OC spray against him despite knowing that he suffered from asthma and had previously sustained a collapsed lung. ECF No. 12, ¶ 10. A respiratory condition such as asthma may constitute a serious medical need depending on its severity. *See Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) ("As a general matter, asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." (internal quotations omitted)). And a prison official's alleged intentional exposure of a severely asthmatic inmate to chemical agents plausibly supports an inference of deliberate indifference, particularly where, as here, it is alleged that the official repeatedly permitted deployment of large amounts of OC spray without proper decontamination. Accordingly, the Court will deny Defendants' motion to dismiss as to Mitchell's Eighth Amendment deliberate indifference to medical needs claim against Best.

> E. The Complaint fails to state a § 1983 conspiracy claim against any Defendant.

Mitchell's Complaint is peppered with allegations that can be construed as raising a civil conspiracy claim. *See e.g.*, ECF No. 12, *generally*. "To demonstrate a

12

conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1983), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).  The plaintiff must allege facts to support an actual agreement among the parties to the conspiracy.  *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 Fed. Appx. 131, 137 (3d Cir. 2011) (per curiam).  "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss."  *Rogers v. Mount Union Borough ex rel. Zook,* 816 F. Supp. 308, 314 (M.D. Pa. 1993).  Because "the linchpin for conspiracy is agreement," allegations of parallel or concerted conduct, without more, are insufficient. *Watson*, 436 Fed. Appx. at 137.  Rather, a plaintiff must allege particularized facts concerning the period, object, and actions taken in furtherance of the alleged conspiracy.  *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003); *see also Brown v. Camp Hill*, 2015 WL 5675575, at *5 (M.D. Pa. Sept. 25, 2015) ("A conspiracy claim requires more than mere speculation as to an agreement. Plaintiff must provide specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct.") (internal quotation marks omitted).

While Mitchell's allegations arguably suggest coordinated conduct among certain Defendants, they do not support a plausible inference of an actual agreement to violate Mitchell's constitutional rights.  *See Watson*, 436 Fed. Appx. at 137;

*Grigsby*, 250 F. Supp. 2d at 458.  The Court will therefore dismiss Mitchell's conspiracy claim without prejudice.

F.  The Complaint fails to state a claim under the ADA.

Title II of the ADA prohibits a public entity from discriminating against disabled individuals by denying them equal access to services, programs, or activities. 42 U.S.C. §§ 12131–12132. "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).

To succeed on a Title II claim, the plaintiff "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018); *see also Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 527 (3d Cir. 2024).  When seeking compensatory damages, the plaintiff must also demonstrate intentional discrimination under a deliberate indifference standard. *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023).

Mitchell alleges that he and Crawford were "mental health patients that are taking medication for mental disorders and were restrained behind the door" when OC spray was deployed into their cell.  ECF No. 12, ¶ 9.  He further alleges that Defendant Best authorized the use of OC spray despite Mitchell's asthma and history of a collapsed lung caused by prior gunshot wounds. *Id.*, ¶ 10.  These allegations fail

14

to support an ADA claim because they do not support a plausible inference that Mitchell was excluded from participation in, denied the benefits of, or otherwise discriminated against with respect to a prison service, program, or activity by reason of a disability. These allegations simply repackage Mitchell's Eighth Amendment claims as an ADA claim. Claims concerning allegedly improper medical treatment, excessive force, or unconstitutional conditions of confinement do not, without more, establish discrimination under the ADA. *See Iseley v. Beard*, 200 Fed. Appx. 137, 142 (3d Cir. 2006) (noting that denial of medical treatment for disabilities "is not encompassed by the ADA's prohibitions"). The Complaint also fails to allege facts to support a plausible inference that any Defendant acted "by reason of" Mitchell's alleged disabilities. The Complaint does not identify any accommodation that Mitchell requested and was denied, nor does it allege that Defendants treated him differently because of a disability. The Court will therefore dismiss Mitchell's ADA claim without prejudice.

V.    Conclusion

For the foregoing reasons, the Court will enter an Order granting in part and denying in part Defendants' partial motion to dismiss the Complaint. The motion will be granted as to (1) all claims for monetary relief against Defendants in their official capacities, (2) the failure-to-train claim against Defendants Irwin and Wieland, (3) the First Amendment retaliation claim against all Defendants, (4) the Fourteenth Amendment conspiracy claim against all Defendants, and (5) the ADA claim. Mitchell's official capacity claims will be dismissed with prejudice because any

attempt to amend as to these claims would be futile. All other dismissed claims will be dismissed without prejudice and with leave to file an amended complaint within twenty (20) days to cure the deficiencies identified in this Memorandum Opinion. The motion will be denied to the extent it seeks dismissal of Mitchell's Eighth Amendment deliberate indifference to medical needs claim against Defendant Best. Mitchell's Eighth Amendment excessive force claim against Defendant Fiedor and the John/Jane Doe Defendants is unaffected by this Memorandum Opinion.

DATED this 6th day of June 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE